## JOSEPH LACHANCE'S CASE.

### Franklin.    Opinion October 4, 1922.

*In industrial accident cases, as a usual rule, knowledge of a foreman is knowledge of the principal. An oral notice may be equivalent to a written notice regularly given. Where death ensues from a disorder or disease, after an injury, which would not have occurred at the time it did, and in the way it did, had it not been for the injury, it must be held to have resulted from the injury.*

As a usual rule, in industrial accident cases, foremen are included in the category of those whose knowledge is regarded as that of the principal.

In and of itself, an oral notice may not take the place of a written one under the Workmen's Compensation Act. Nevertheless, an oral notice may attain to the office of suggesting a way, which the employer or his agent may follow or not, to the acquirement of such intellectual acquaintance with fact as would be the equivalent of a notice regularly given.

If, but for an injury arising out of and in the course of his employment, an employee would not have died at the time at which, and in the way in which, he did die, then, within the meaning of the act, the unfortunate occurrence, though it merely hastened a deep-seated disorder to destiny, must be held to have resulted in an injury causing death.

The foreman of a camp in the lumber woods was the employer's agent. As such agent he had, seasonably, a knowledge of the employee's injury.

On appeal by defendants. This is an appeal from the decision of the Chairman of the Industrial Accident Commission, granting compensation to claimant as dependent widow of Joseph Lachance, in the sum of $15.00 per week, from October 22, 1920,

for a period of 233 1-3 weeks. Joseph Lachance, husband of dependent claimant, while in the employ of the Skinner Lumber Company, at Skinner, Maine, an assenting employer, as a blacksmith, while riding on a saddle horse, furnished by the employer, in going to the Pine Tree Mill Camp of employer for the purpose of performing his regular work as blacksmith at said camp, was thrown from the saddle by the horse, landing heavily on the ground receiving an injury to his leg below the knee. He reported the accident to his foreman, Frank McIver, who was in charge of the camp. After the accident he complained of his leg and heart and general lameness. He had been subject to heart trouble for some time prior to the accident, which occurred October 22, 1920, and he died April 3, 1921. The award of compensation was made upon the ground that the fall from the horse was the cause of his death by accelerating a pre-existing disease resulting in the earlier death by reason of the injury. Appeal dismissed. Decree affirmed.

The case is fully stated in the opinion.

*E. J. Hudon and H. M. Cook,* for applicant.

*Arthur L. Robinson,* for defendants.

SITTING: CORNISH, C. J., SPEAR, PHILBROOK, DUNN, DEASY, JJ.

DUNN, J. Joseph Lachance was a blacksmith in the employment of the Skinner Lumber Company. He was wont to come, from the main shop at the company's mill, to do horseshoeing and other work at its different camps in the woods, whenever his services were needful.

In the forenoon of October 22, 1920, he set out from his home, in the Franklin County settlement known as Skinner, where both the head shop and the principal local office of the concern were, to go to Pine Tree Camp, eight miles away. He was mounted on a horse which the employer had furnished; his kit was in a knapsack on his back; and before him, on the saddle, rested a rifle. While yet within the sight of a person on the piazza of the Lachance house, the horse, as suddenly as unexpectedly, became unruly. The beast reared, and zigzagged, and bucked. He threw his rider, and, one foot remaining in a stirrup, he dragged him until, after a distance of a few feet, the man's foot became free. Witnesses said that the horse, in turning to make for a stable, stepped upon the prostrate man's back.

With patent difficulty, in stooping posture, and displaying evidence of the presence of that uncertain thing called shock, Lachance walked home; but only to rest and to refit himself to start out once again, this time on another horse. Arriving at the camp, he told Frank McIver, the foreman in charge, of what had occurred. That day he worked, but on the next he did not. On this next day he complained of pain in his leg and of heart trouble. The foreman, realizing in some degree the seriousness of the injured man's plight, summoned the company's doctor to treat him. The doctor found Lachance in a bunk. He was generally lame, bruised in the left leg, and "with a special pain in his side," but he soon began working again. The length of time that he remained at the camp is stated from two to three weeks. Little visits to his home, where he had the doctor's aid, intersticed his stay. His ability to work was affected, concededly, by the accident, but the defense insists the record to show that lameness solely contributed to lessened capacity for labor; and that, with regard to this, there was a full recovery. From the Pine Tree Camp Mr. Lachance went to one styled No. 6. Here he continued to work, intermittently, until one day in the month of February. He was not now that he had been. He was, in despite of medical care, in the phrase of that camp's foreman, "all gone." This foreman dismissed him from service. The man went home. There he still had the same physician's care. Ultimately he was taken to a hospital, where he died on April 3, 1921, the cause of his death being given as asystole.

The presenting questions are:

(1) Whether the employer or his agent had knowledge of the injury within the provisions of section twenty of the Workmen's Compensation Act, no formal written notice having been given; and

(2) Whether the finding and decree of the Chairman of the Industrial Accident Commission, based on the theory that the decedent died from a personal injury which arose out of and in the course of his employment, had the support of evidence; not necessarily of evidence in preponderating weight, but rather of evidence as a mere support. *Ballou's Case*, 121 Maine, 282.

Mr. McIver, as we have seen, was the foreman or boss in charge of affairs at the Pine Tree Camp. As a usual rule, in industrial accident cases, foremen are included in the category of those whose

knowledge is regarded as that of the principal. *Simmons's Case*, 117 Maine, 175; *Bloom's Case*, 222 Mass., 434; *State ex rel.* v. *District Court*, 132 Minn., 251, 156 N. W., 278. It is common knowledge, to go one step farther in a right direction, that a boss in charge of a lumber woods camp, is invested with an authority approaching unto that of the master of a ship at sea.

Oral notice of the injury, on the very day, was given to the foreman. Of course oral notice is never the written notice that the statute extorts as essential to the workman's rights. Laws of 1919, Chap. 238, Sec. 17. In no case may an injured workman recover compensation, unless his proof shall show that he gave a written notice within the requisite time, except where the employer or his agent had knowledge of the injury. Section 20. *James Graney's Case*, 121 Maine, 500. An oral notice in and of itself may not take the place of a written one. Nevertheless, an oral notice may attain to the office of suggesting a way, which the employer or his agent may follow or not, to the acquirement of such intellectual acquaintance with fact as would be the equivalent of a notice regularly given.

Properly may it be said, in recurring to the subject of agency in the case in hand, that the foreman or boss called the doctor to Lachance—a doctor under retainer by this defendant to attend its injured employees. Another boss, later on, perceived the man's physical unfitness to do work. And, so perceiving, discharged him from his job. The purpose of a written notice to, or of knowledge of the injury by, the employer is that he may have opportunity for the protection of his rights. What was done throughout this case goes to show that the employer's rights were not left unprotected. The acts themselves tend to show that McIver, the boss, was the employer's agent. And that, as such agent, he had, seasonably, a knowledge binding upon his principal.

The real rub of the case is in another respect. Heart disease caused Lachance's death. The malady was chronic before the mishap with the horse. Plaintiff's attitude is that the injury accelerated the disease to a mortal end sooner than it otherwise would have come; that the death was due, not to the character of the disease acting alone and progressing in its usual course, but to that disease hastened to culmination by an industrial injury.

If Lachance, but for the hurt, would not have died at the time at which, and in the way in which, he did die, then, within the meaning of the Workmen's Act, the unfortunate occurrence, though it merely hastened a deep-seated disorder to destiny, must be held to have resulted in an injury causing death. *Patrick* v. *Ham*, 119 Maine, 510; *Brightman's Case*, 220 Mass., 17; *Madden's Case*, 222 Mass., 487; Honnold on Workmen's Compensation, Vol. 1, Page 509. In an analogous situation, this principle underlies the decision in *Orlow Webber's Case*, 121 Maine, 410.

Though apparently a robust and vigorous man, Lachance, for two years before the accident, had had what physicians recognized, by its signs and symptoms, as a cardiac limitation. But this had been compensated, or recovered from temporarily, in nature's way. The heart was carrying its added load efficiently. A dropsy of the subcutaneous cellular tissue of the feet and legs had disappeared. The man was working, each following day, and bearing the heavy burden of a blacksmith's toil, uncomplainingly and uninterruptedly, to and inclusive of that day just before the injury. Witnesses spoke of his great capacity, till then, for unremitting industry. Idleness on his part seems to have been unknown. Then came an unusual strain, with an accompanying traumatic condition, as the immediate result of what happened while Lachance was doing that which he had been employed to do. Soon afterward the man was observed, by those persons whom he met in his daily walk, to be suffering from breathlessness. Also, the circulation of blood was impaired, due to failure of the aortic valve to function regularly; an impairment increased by the effusion, in considerable quantity, to the embarrassment of the lungs, of serum or fluid into the chest. Seemingly this empyema, which was relieved by tappings, was not at first discernible; likely because the accident did not manifest itself at once in full degree. Oedema of the feet, the ankles, and lower legs reappeared. The man got over the effect of lameness. Not so as to his other ailments. His physical failure was rapid. At the end of scarcely more than five months, he died, aged 56 years. But for the injury, there is nothing to indicate that the man would not have had an expectancy of life embracing a period of years. True it is, that medical men, in keen perception, in examining Lachance both before and after the fall from the horse, had observed the same symptoms. Equally

true is it, in prominence and with emphasis, that neither Lachance's wife, nor daughter, nor niece, nor a fellow-workman knew him, before the accident, to be a sufferer from disease. Yet they, and each of them, noticed and remarked his rapidly progressive decline, dating from the fall. So did the bosses at the camps. Upon the authority of the foreman at the mill, "he was a rugged man to that time."

The record carries an admission that hospital doctors attending Lachance could not relate his death to the accident. Why expect otherwise? Two other physicians were called, but as experts only. No novel virtue should be ascribed to the testimony of either. Each had his hypothesis. They,—like the counsel on the one side and the other,—directed attention to opposite conclusions. Within restrictions studiously respected they shed light and revealed wisdom upon what already had been imprinted, and only this.

Sufficient has been said to show, that it is rational to say, of the case as a whole, that Joseph Lachance began to die when he was thrown from the horse, and that thereafter he died, as the result of an injury that arose out of and in the course of his employment.

*Appeal dismissed.*
*Decree affirmed.*