## Elkhorn Coal Company v. Combs, et al.

(Decided May 21, 1926.)

### Appeal from Letcher Circuit Court.

1 Master and Servant—Findings of Compensation Board on Evidence are Conclusive.—Findings of fact by the Workmen's Compensation Board, supported by any competent evidence, are conclusive on courts, in absence of fraud or mistake.

2    Master and Servant—Evidence Held to Sustain Finding that
     Death of Employee Resulted from Injury and Not from Disease.—
     Evidence held to sustain finding that employee's death in Febru-
     ary was caused by blow he received in November, and was not
     caused by disease.

3.   Master and Servant—Where Evidence Shows Death Resulted
     Solely from Injury, and Compensation Board so Finds, Case is Not
     One for Apportioning Award (Ky. Stats., Section 4901).—Where
     there is evidence to establish that sole cause of employee's death
     was injury received, and Workmen's Compensation Board so finds,
     Ky. Stats., section 4901, providing for apportionment of award in
     case disability is not caused solely by injury, is inapplicable.

4.   Master and Servant—Notice of Injury Held Unnecessary where
     Employer's Foreman and Superintendent Knew of Accident, and
     Doctor Waited on Employee (Ky. Stats., Sections 4914, 4917).—
     Want of written notice, pursuant to Ky. Stats., sections 4914,
     4917, of accident resulting in injury to employee causing death,
     did not bar proceedings by widow for compensation, where em-
     ployer's foreman had immediate knowledge of accident, company
     superintendent heard about it next day, and company doctor
     waited on employee day afterward.

W. M. DUFFY and FIELDS, DAY & FIELDS for appellant.

FIELDS & COMBS for appellees.

OPINION OF THE COURT BY JUDGE DIETZMAN—Affirm-
ing.

On November 14, 1923, Harlan Combs, then in the
employ of the appellant herein, was engaged in snaking
some logs down a mountain side, for which purpose he
was using a team of horses attached to the first log, be-
hind which were strung out the other logs. In the early
afternoon of that day, as he neared the bottom of the
mountain side on one of these trips, a rock of large dimen-
sions, dislodged by the fourth log from the team, came
crashing down the hillside and struck Combs on
the right side of his back, knocking him down.
His foreman, Town Hall, and also some of his
colaborers were present at the time and saw the
accident. They hurried down the hillside to where
Combs was lying and assisted him to his feet; but
it was some twenty minutes to a half hour before he could
go ahead with his duties. That night he complained fre-
quently to J. C. Craft, with whom he was sleeping, about
the pain in his back and slept but fitfully. He returned
to his tasks the next day and was seen in the morning by
the superintendent of the appellant, Arthur Bastin, who

on his direct testimony admitted that he heard that morning of the accident of the preceding day but said that as he saw Combs on the job he paid no attention to it. His cross-examination, which took place some time thereafter, developed a good deal of forgetfulness on his part, and he rather contradicted his direct testimony as above stated. We believe, however, the evidence establishes that he did have the information he admitted he had on his direct examination. Combs worked the whole day following the accident and returned to work on the succeeding day but quit before night and never again returned to his labor. He was examined shortly after the accident by the appellant's doctor, Dr. Owen Pigman, who in his testimnoy could not definitely state whether or not he found any external evidence of injury upon Combs. He did say, however, that Combs' body had at that time a peculiar ivory color, which appellant's witness, Dr. Bizot, said was an indication of Bright's disease. On November 25th following Combs was examined by Dr. B. C. Bach for insurance. He gave the doctor no history of the accident of November 14th, nor did the doctor in his examination of Combs' body, which he says was superficial, discover any evidence of external violence. He made an analysis of Combs' urine but discovered no trace of albumin therein. In the latter part of December or the first part of January Harlan Combs became quite ill. His vision was much affected and he suffered greatly from his back. A joint examination of him by his personal physician, Dr. J. C. Sumner, the company doctor, Dr. Pigman, and Dr. Bach, was then had and they decided that he ought to go to Louisville at once for an examination there and treatment in a hospital. He accordingly went to Louisville, the appellant paying part of the expenses of the trip. He was there examined by Dr. Bizot in the presence of his own physician, Dr. Sumner. Dr. Bizot was of the opinion that Combs was suffering from an acute stage of Bright's disease and had not long to live. On his advice Combs returned immediately to his home. Dr. Bizot's predictions were fulfilled and in the early part of February Combs died. A post-mortem examination was held by Dr. P. Y. Pursiful and Dr. Sumner. They removed from the body the right kidney and found it considerably discolored in its lower half. They opened the kidney and found a lot of pus. Deciding that these conditions of the kidney had brought about the death of Combs, they replaced it in the body and made no

further examination, not even of the left kidney. The widow of Combs, appellee herein, later made seasonable application under the Workmen's Compensation Act for compensation for herself and infant children, for the death of Combs, claiming that his death was caused by the blow he had received on his back the preceding November. The compensation board, after hearing, awarded the appellees the full compensation provided by the act, and on appeal to the circuit court the award was affirmed. From this judgment this appeal is prosecuted.

But two grounds are urged for reversal. First, that there is no evidence in the record to sustain the findings of the board, that Combs' death was caused by the blow he received in November, and, secondly, that notice of the injury was not given to the company in accordance with sections 4914 and 4915 of the statutes. As to the first con tention it is settled that if there is any competent evidence to sustain the findings of fact by the compensation board, such findings are conclusive in the absence of a claim of fraud or mistake. Furnace Coal Mining Co. v. Carroll, 212 Ky. 1, 278 S. W. 171. There being no such claim here, the only question to determine is whether or not there was any competent evidence to sustain the board's findings. The testimony of Dr. Sumner, fairly construed, is to the effect that the condition of Combs' kidney which caused his death was brought about by the traumatic injury he had received in November. There is also proof in the record which shows that Combs prior to the accident in November was to all outward appearances a well man, capable of doing and actually doing the heaviest of manual labor; that he never complained of any illness prior to being hit by this rock; that an examination of his urine on November 25th disclosed the presence of no albumin, although it is true Dr. Bizot, who testified for appellant, says that this was possible with Combs then suffering from Bright's disease, as the disease at the time of such examination might have been dormant. Dr. Bach also testified that the condition of the kidney disclosed by the post-mortem examination could have been brought about by a suppression of the urine and that a traumatic injury could cause a suppression of the urine. Dr. P. Y. Pursiful gave it as his opinion that the traumatic injury could have occasioned the condition of the kidney. Although appellant introduced a great deal of evidence to the contrary of what appellee had proved,

yet there being some competent evidence, as shown, on which the board could rest its findings of fact, such finding is conclusive. Before passing to the second branch of the case, we may note a suggestion thrown out in appellant's brief to the effect that if we conclude that there was some evidence to support the board's finding of fact, we should also conclude that such evidence demonstrated that Combs' death was caused in part by the injury he received and in part by a pre-existing disease, and for that reason the board should have apportioned the award as required by section 4901 of the statutes. Kingston-Pocahontas Coal Co. v. Maynard, 209 Ky. 431, 273 S. W. 34, is cited. The facts in that case brought it within the scope of section 4901, but the facts in this one do not. The evidence did not show that Combs' death was caused by a combination of a pre-existing disease and a traumatic injury. Appellee's evidence established the sole cause as a traumatic injury. Appellant's evidence established the sole cause as a disease unaccompanied by traumatic injury. Under the proof, it was either one or the other, but there was no proof that it was a combination of both. But had there been, there was, as shown above, evidence to establish that the sole cause of Combs' death was the traumatic injury and the board so finding, its finding is conclusive. Therefore, there is no place in this case for the apportionment prescribed by section 4901, supra.

So far as the notice of Combs' injury to his employer is concerned, the evidence shows that Town Hall, the foreman of Combs, witnessed the accident and gave him immediate help, and that on the succeeding day the superintendent learned of it. Dr. Owen Pigman made a written report of this accident for appellant on blanks furnished by the compensation board. A copy of this report is in the record and bears date 12/3/23, just two weeks after the accident. The blank in this report headed, "Give an accurate description of the nature and extent of injury," is filled out: "Bruise in right lumbar region followed by acute nephritis."

Kentucky Statutes, section 4917, provides:

"Such notice shall not be held invalid or insufficient by reason of any inaccuracy in complying with section 4915 hereof unless it be shown that the employer was in fact misled to his injury thereby. Want of notice or delay in giving notice shall not be a bar to proceedings under this act if it be shown that the employer, his agent or representative had knowledge

of the injury or that such delay or failure to give notice was occasioned by mistake or other reasonable cause.''

This section and sections 4914 and 4915, relied upon by appellant, were considered and construed in the case of Wilburn v. Auto Exchange, 198 Ky. 29, 247. S. W. 1109, where we said:

"The authorities generally are in accord upon this subject, holding that any fact or circumstance which brings to the attention of the employer or his principal representative knowledge that the employe has received an injury will be sufficient. In other words, the requirements of sections 4914 and 4915, Kentucky Statutes, with respect to the written notice to be given to the employer is directory merely.''

The same sections were again before the court in the case of Bates and Rogers Construction Co. v. Emmons, 205 Ky. 21, 265 S. W. 447, and we there said:

"By the express provision of the statute, want of notice is not a bar to the proceeding, if the employer or his representative had knowledge of the injury, and the officer or agent of the corporation in charge of the business at the place where the injury occurred is a representative of the corporation for this purpose. It is conceded in the evidence that the representative of the employer at the place of the accident had knowledge that the cable had struck appellee across the bridge of the nose and corner of the left eye, as above stated, knocking him down and causing a hemorrhage from the nose. But it is insisted that they had no notice that his eye was injured, and this is the thing for which compensation is now being claimed. But notice of a physical injury carries with it notice of all those things which may reasonably be anticipated to result from it. Such an injury to the bridge of the nose and the corner of the left eye as appellee sustained would naturally be expected to affect the eye, and, as appellant knew all about the physical injury, we do not see that it can complain that notice was not given it that the eye was affected, for such injury would naturally affect the eye.''

See also Ames Body Corporation v. Vollman, 199 Ky. 358, 251 S. W. 170.

The facts of this case bring it within the rule of these cases. Hall, Combs' foreman, saw the rock go crashing down the hill; he saw Combs fall; he hastened to his aid; he was told then by Combs that the rock had hit him; he helped Combs to his feet; he knew it was some time before Combs could resume his tasks. Bastin, appellant's superintendent, heard about the accident next day. Pigman, the company doctor, waited on Combs a day or so after the accident and on December 3, 1923, two weeks thereafter, made a written report for appellant in which he gave the nature and extent of Combs' injuries. All this being true, as appellant clearly had knowledge of the accident and injury, the want of immediate notice to it by Combs was not a bar to these proceedings.

It results, therefore, that the judgment of the lower court affirming the award of the Workmen's Compensation Board is correct and it is hereby affirmed.