## TEXAS EMPLOYERS' INS. ASS'N v. WONDERLEY et al. (No. 3190.)

Court of Civil Appeals of Texas. Amarillo. March 20, 1929.

Rehearing Denied April 17, 1929.

Bullington, Boone, Humphrey & King, of Wichita Falls, for plaintiff in error.

Weeks, Morrow, Francis & Hankerson, of Wichita Falls, and Bryant & McLynn, of Sherman, for defendants in error.

HALL, C. J. The defendant in error Wonderley and his attorneys recovered, before the Industrial Accident Board, against the plaintiff in error, an amount in excess of $500, and on October 28, 1927, the plaintiff in error filed this suit to set aside the award. All jurisdictional matters are alleged.

The defendant in error alleged in his cross-action: That on the 21st day of January, 1927, while in the employ of J. J. Perkins, engaged in drilling an oil well, he was injured by the falling of heavy machinery upon his left foot, crushing and bruising the fore part of his left foot and three toes. That at the time of his injuries he was receiving approximately $13 per day for his work. That after his foot was crushed some kind of infection set up in his left foot and leg and thereafter spread to his right foot and leg and other portions of his body, and, in order to save his life, his right leg was amputated half way between his knee joint and his hip. That the amputation was a result of diseases and infections naturally and proximately resulting from his injuries. That prior to said injuries he was a strong, robust man, in good health, and capable of performing manual labor, and since he has not been able to do any character of work and was totally and permanently incapacitated. That, by reason of his total and permanent incapacity, he was unable to earn a livelihood for his wife and himself. That the weekly compensation allowed him was insufficient for their support, and he prayed for a lump sum settlement.

By supplemental pleadings, the association denied that the defendant in error's condition was caused by the injuries received while working at the oil well, but was caused by what is known as diabetes (that is, that the defendant in error, prior to his injuries, had been suffering with a disease called diabetes, and that the amputation of his leg was the result of said disease); and, further answering, plaintiff in error states that such condition was brought about by some disease which

the defendant in error had at the time of his injuries, that, if the said Wonderley, at the time when he was injured, had not neglected himself in the treatment of diabetes and had continued proper treatment, it would not have been necessary to have his leg amputated, and that the neglect of his condition and the failure to keep up the treatment for his trouble caused the disease which was a proximate and sole cause of all his present condition.

The court submitted the controversy upon special issues and upon the answers returned by the jury, the court rendered a judgment in a lump sum in the amount of $4,584.15, with interest at the rate of 6 per cent., in favor of Wonderley, and $2,292.07 in favor of his attorneys.

The substance of the first proposition urged is that, where the plaintiff in error alleged that, instead of Wonderley's condition being a result of any injury, it was brought about by some disease which the defendant had, and, where there was evidence upon the trial that disease germs other than those arising from the injury which probably brought about the condition of the complaining party, the court erred in failing to submit the following issue to the jury: "If you have answered defendant is permanently and totally disabled from performing labor, then find whether or not such condition was brought about solely and proximately by other causes than the injury to his foot on January 21, 1927."

The contention of the defendant in error is that the infection in his right knee, which resulted in the amputation of his right leg, was the result of infection of some kind in the wound caused by the crushing of his left foot and amputation of his toes. On the other hand, the plaintiff in error contended principally that the infection was the result of his diabetic condition.

The court submitted several issues upon appellee's theory that the infection was the result of the injuries to his foot and resulted in the loss of his leg; and, by other issues, submitted the appellant's theory that appellee's diabetic condition caused the infection and loss of his leg. The jury answered all the issues in appellee's favor. When the charge is construed as a whole, we think these two theories were correctly and fairly presented.

■ Under the allegation that, instead of Wonderley's condition being the result of any injury, "it was brought about by some disease which this defendant had," several doctors testified as experts. The substance of their testimony is that infection might get into the system and the blood stream through open wounds, sores, cuts, abrasions, boils, and the mucous lining of the stomach or bowels, and even through the hair follicles. Admit the truth of this testimony, still in the absence of any evidence tending to show any actual infection of the follicles, mucous surfaces, or the infection of any open sore, abrasion, or other avenue of infection, other than the injury complained of, the testimony does not warrant the submission of the special issue. No one testified that the appellee was ever infected through any such possible avenues. The only hint in the testimony that there was ever any opportunity for such infection, other than the injured foot of appellee, is the evidence of Dr. Ogden, who stated he treated appellee for carbuncle, erysipelas, and diabetic symptoms in August and September, 1923, which was more than three years prior to the date of the injury, and his testimony further is that the carbuncle and erysipelas yielded to his treatment and the symptoms disappeared. Because there was no evidence of any probative force tending to support the requested issue, the court did not err in refusing to give it. Texas Employers' Ins. Ass'n v. Drummond (Tex. Civ. App.) 267 S. W. 335.

■■ The appellant complains because the several issues inquiring whether the injury, "together with the infection resulting therefrom, if any," concurred with Wonderley's diabetic condition in producing the several results shown, failed to inquire whether the infection naturally resulted from the wound, and it is insisted that the failure of the court to charge that such infection, if any, must naturally result from the wound, probably led the jury to believe that they could answer said issues favorably to appellee, even though the infection did not naturally arise from the injury.

A sufficient answer to this contention is that there was no evidence tending to show that there was any unnatural infection. R. S. art. 8309, defines the term "injury" used in the Workmen's Compensation Law as "damage or harm to the physical structure of the body and such diseases or infection as naturally result therefrom." There is no evidence that the infection had any independent or unusual origin. Infection is the natural result of the wound whether it is "usual or unusual, if there is a direct causal connection between the injury and the disease, so that the disease is directly attributable to the injury." Bramble v. Shields, 146 Md. 494, 127 A. 44; Dickson Construction & Repair Co. v. Beasley, 146 Md. 568, 126 A. 907; King v. Buckeye Cotton Oil Co., 155 Tenn. 491, 296 S. W. 3, 53 A. L. R. 1086; Bethlehem Shipbuilding Corporation v. Industrial Accident Commission, 181 Cal. 500, 185 P. 179, 7 A. L. R. 1180, and note; Texas Employers' Ins. Ass'n v. Drews (Tex. Civ. App.) 297 S. W. 630; Consolidated Underwriters v. Free (Tex. Civ. App.) 253 S. W. 941.

On May 28, 1927, Wonderley wrote the commissioner of insurance at Austin, giving notice that he had been injured on January 21st while working for J. J. Perkins. A copy of this letter was introduced, with the follow-

ing indorsement shown on it: "Industrial Accident Board. Received June 1, 1927, State of Texas." There is a certificate attached to the copy that it is a full, true, and correct copy of a letter dated May 28th, giving notice of injury. The appellant objected to the indorsement stamped on the letter because it was not included in the certificate and was no part of the letter signed by Wonderley, and further because it was immaterial and was not addressed to the Industrial Accident Board. These objections were all overruled.

It is not necessary to pass upon the merits of this contention. R. S. art. 8307, § 4a, provides that, unless the association or subscriber have notice of the injury, no proceeding for compensation for injury shall be maintained unless a notice of the injury shall have been given to the association or subscriber within 30 days after the happening thereof and unless a claim for compensation with respect to such injury shall have been made within 6 months after the occurrence of the same. The record shows that the accident which resulted in Wonderley's injury occurred January 21, 1927, but that he continued to work until February 7th, thereafter, and he alleges that the injury was not serious and did not, until February 7th, impair his ability to work, but that on said date his injured foot commenced to pain him considerably and turned black, and the flesh commenced to slough off as the result of the infection, which did not commence until about February 7th; that thereafter the infection spread to his right leg until about October 31st the infection was such that it became necessary to amputate his right leg in order to save his life. He testified that he went to the hospital July 29th and stayed there until December 8th; that they took his toe off on July 29th and opened his leg to let the pus drain from it. It will be seen from the foregoing statement that his injury was not compensable in any sum until a week from February 7th, nor was he entitled to compensation for the loss of his toe until July 29th, nor for the loss of his leg until October 31st. His suit was filed November 25, 1927. O. M. Jones, who was superintendent for the J. J. Perkins leases, testified that he saw Wonderley about an hour after the accident and examined his foot, and that Wonderley told him how it happened and he advised him to go to a doctor; that he made a report to the insurance company and the Industrial Accident Board of the injury, and followed it up with a supplementary report a few weeks later. He stated that it was his duty to make the report and file one with the Industrial Accident Board and one with the insurance company and retain a copy. He further testified that he advised Wonderley to take the matter up with the board along in April or May. The copy of the claim report by Jones was introduced in evidence, and is stamped: "Industrial Accident Board. State of Texas.

Received August 8, 1927." A telegram, dated July 25, 1927, signed by Wonderley's attorneys, addressed to the Industrial Accident Board at Austin, was also offered in evidence, which recites, in part: "Claim is hereby presented for injuries to J. D. Wonderley oil driller occurring at Beach Well near Burkburnett, Texas, on January 21, 1927, said injuries caused by large casing falling on toe of left foot. Since two weeks after accident been unable to work on it and as consequence some bones have been removed from it. J. J. Perkins independent oil man owner of rig, residence Dallas, Texas. Company insured with unknown to claimant. Notice given Perkins as required by law."

We think the requirements of article 8307, § 4a, have been substantially complied with. The word "accident" is not synonymous with the word "injury" as used in the Workmen's Compensation Law. The injury is the result of the accident, but the accident does not always produce an injury. The requirements of section 4a, that notice of the injury shall be given within 30 days after the happening thereof, and claim for compensation shall be made within 6 months after the occurrence of the same, does not mean within 30 days or within 6 months after the accident. By injury is meant the state of facts or the condition which first entitles the claimant to compensation. In this case the injury did not develop until more than 2 weeks after the accident and the claimant suffered no loss of his earning capacity until that time. Cooke v. Holland Furnace Co., 200 Mich. 192, 166 N. W. 1013, L. R. A. 1918E, 552; Esposito v. Marlin-Rockwell Corp., 96 Conn. 414, 114 A. 92; Hustus' Case, 123 Me. 428, 123 A. 514; John A. Schumaker Co. v. Kendrew, 68 Ind. App. 466, 120 N. E. 722; Sheafor v. Standard Accident Ins. Co., 166 Wis. 498, 166 N. W. 4; Stolp v. Dept. of Labor & Industries, 138 Wash. 685, 245 P. 20.

Even if it could be successfully maintained that no notice was given otherwise, the fact remains that Jones, the foreman in charge of the well where appellee was injured, had actual notice of the injury within less than an hour after the accident occurred. McKinney Steele Co. v. Lewellen, 224 Ky. 200, 5 S. W. (2d) 1042; Elkhorn Coal Co. v. Combs, 214 Ky. 635, 283 S. W. 1007; Lachance's Case, 121 Me. 506, 118 A. 370; Simmons' Case, 117 Me. 175, 103 A. 68; Van Treeck v. Travelers' Ins. Co., 157 Ga. 204, 121 S. E. 215; Hydrox Chemical Co. v. Industrial Commission, 291 Ill. 579, 126 N. E. 564.

Informal and verbal, as well as actual, notice is sufficient under the statute. Texas Employers' Ins. Ass'n v. Tabor (Tex. Civ. App.) 274 S. W. 309; Texas Employers' Ins. Ass'n v. Price (Tex. Civ. App.) 300 S. W. 667. It is also held that the filing of a suit constitutes notice of injury to an employee. Roland v. Employers' Casualty Co.

**390**

(Tex. Civ. App.) 290 S. W. 895; Id. (Tex. Com. App.) 1 S.W.(2d) 568.

██ Even though the letter, with the notation that it was received June 1st by the board, was improperly admitted, the action of the court is harmless error. Jones, the foreman at the oil well, had actual notice of the accident within two hours thereafter, and, as held in the cases above cited, notice to the foreman in charge of the work is notice to the subscriber. The record further showing that Jones forthwith gave notice of the accident to the board and to the insurance company, we think this, with the other notices and the filing of the suit, is sufficient to meet the requirements of the statute, both as to notice and filing claim.

██ By special issue No. 2, the court inquired whether the defendant was suffering from total incapacity to perform work and instructed the jury that the term "total incapacity," as used in the Workmen's Compensation Act, does not imply an absolute disability to perform any kind of labor, but that a person disqualified from performing the usual tasks of a workman in such a way as to enable him to procure and retain employment, is ordinarily regarded as totally incapacitated. This was a correct definition of total incapacity under the decisions in this state. U. S. Fidelity & Guaranty Co. v. Weir (Tex. Civ. App.) 286 S. W. 565; Bishop v. Millers Indemnity Underwriters (Tex. Civ. App.) 254 S. W. 411; Georgia Casualty Co. v. Ginn (Tex. Civ. App.) 272 S. W. 601; Employers' Liability Assur. Corp. v. Williams (Tex. Civ. App.) 293 S. W. 210. The appellant objected to the court's charge in this particular, and submitted a special charge as follows: "You are instructed in this case in connection with issues two and three that total incapacity as used in this charge does not mean the absolute inability to perform any kind or character of labor, but means to be so injured that he becomes disqualified from performing the usual tasks of a workman to such an extent that he cannot procure and retain any kind of employment. It does not confine the capabilities of one's earning capacity to the same employment as that which one was engaged in at the time of becoming incapacitated, but requires one to engage in a work or employment for which one is fitted or which one is capable of performing."

The last sentence of this requested charge was inspired by the fact that Wonderley, while on the witness stand, after testifying that his education was insufficient to do any kind of work other than oil field work, that he only had about four years public schooling and never attended high school, but was only in the fifth grade, and could not do anything except manual labor, stated: "I contracted for twenty-five years in the oil field country." The appellant contends that from this statement the court should have given the requested charge instead of the one given. We cannot assent to this proposition. The fact that he may have been a contractor for years in oil fields did not affect the question of his capacity to labor in his present physical condition. Contractors in the oil field business do not usually perform any manual labor. From the fact that he is a day laborer, it may be inferred that he was not a success as a contractor. Moreover, there is no testimony tending to show that under present conditions he is now qualified to go into the contracting business, either physically, mentally, or from an educational standpoint, as such qualifications may be entirely different from what they were formerly. Nor was it shown that he was financially able to make contracts for developing oil claims or that he was in a position to make the necessary bonds or was possessed of the necessary tools, machinery, supplies, and equipment.

We find no reversible error in the record, and the judgment is affirmed.