## TEXAS INDEMNITY INS. CO. v. HAYES.

### No. 4730.

Court of Civil Appeals of Texas. Amarillo.

March 8, 1937.

Rehearing Denied June 21, 1937.

Don Emery, of Bartlesville, Okl., and W. J. Loftus, of Amarillo, for appellant.

L. B. Godwin and Kimbrough & Boyce, all of Amarillo, for appellee.

HALL, Chief Justice.

This is an appeal from a judgment against the appellant, defendant below, as insurer of Phillips Petroleum Company, the employer of appellee. Appellee claimed compensation under the Workmen's Compensation Law (Rev.St.1925, art. 8306 et seq., as amended [Vernon's Ann.Civ.St. art. 8306 et seq.]), alleging that he suffered an accident on the 27th day of April, 1934, while working for his employer as a welder-helper, the injuries resulting from flashes from the welding apparatus. He further alleges in substance that injury and incapacity did not result until May 2, 1935, at which time he was discharged by the Phillips Petroleum Company. As a result of the injury, he suffered a loss of vision in both eyes, intollerance to light and accommodation, nervousness, optical pains, and headaches; that he gave notice to his employer at the time of the accident on April 27, 1934, and at the time of the resulting injury on May 2, 1935; that on May 16, 1935, he filed his claim for compensation with the board, which made its award and from which award appellee

duly effected his appeal to the district court. He alleges that the injury did not result until May 2, 1935, but in the alternative, he says that if the injury and incapacity occurred prior to that time, he had good cause for not filing his claim until it was filed for the following reasons: First, his employer, by its custom and practice of giving its employees medical attention and employment reasonably suited to their physical condition after an accident, led the appellee to believe that he would be furnished medical attention and employment permanently; second, he did not believe that he was legally entitled to compensation so long as his employer furnished him employment reasonably suited to his incapacity and physical condition.

He further alleged that he had worked the entire year and substantially the whole of the year prior to April 27, 1934, and also prior to May 2, 1935; that other employees worked in a similar employment in the same or neighboring place substantially the whole of the year immediately preceding April 27, 1934, and substantially the whole of the year immediately preceding May 2, 1935; that his average weekly wage was $23.40 and the same amount was paid to others in similar employment.

He further alleged that the next day after the accident he resumed work and without the loss of any time therefrom, worked for said employer until May 2, 1935; that after the date of the accident there were times when his eyes would and did bother him more than at other times, and he would report to the first-aid gentleman and physician, and was invariably treated and admonished to continue with the work and employment and not to suffer exposure, which was at all avoidable, to flashes from welding torches; that until May 2, 1935, he lost no time from his work and employment; that his total incapacity commenced on May 2, 1935, and is permanent.

The case was tried to a jury and at the conclusion of all the evidence, appellant moved for an instructed verdict, which was overruled, and also filed a motion for judgment, notwithstanding the verdict which the court overruled. Judgment was entered in favor of appellee for $4,732.54, decreeing a lump-sum settlement.

The first proposition urged by appellant is: "Where the uncontradicted evidence shows that appellee's injury occurred thirteen months prior to the time that he filed his claim for compensation with the Industrial Accident Board, and where the only excuse offered for failure to file his claim within six months is that his employer had a policy of furnishing employment reasonably suited to the employes' incapacity after injury, such excuse is wholly insufficient to authorize a court or jury to waive strict compliance with the law in reference to filing said claim, and it was error for the trial court to refuse to give defendant's motion for an instructed verdict."

The second proposition is that where the jury finds that an injury occurred on April 27, 1934, and that at least partial incapacity immediately resulted therefrom, a judgment for total incapacity beginning on May 22, 1935 is without support in the evidence. Appellee, Hayes, testified in substance as follows:

That he was injured on April 27, 1934; that prior to that time he had been employed by Phillips Petroleum Company in various oil fields for about ten years, with the exception of near seven or eight months in 1931 and 1932 when he was laid off and then later hired again. Prior to his accident, he had been a welder-helper for three months. On the day of the accident, he was wearing a hood over his head to protect his face and eyes from the electric flash, which hood had dark lenses through which he looked to do his work; that he was working inside of a structure called the bubble tower, and two welders were working with him; that the bubble tower was a circular structure about 12 feet in diameter; that he worked in the tower eight hours, except about forty minutes when he went to the first-aid room as he first became aware of the fact that his eyes were burned, about 3 o'clock in the afternoon, having worked since 7:30 in the morning. His duties were to bring welding rods to the welders and to hold material against the side of the bubble tower in order that the welder might weld these objects to the side of the tower. In view of the fact that he was helping both welders inside of the tower, the glare from welding apparatus would affect him while he had his hood raised in assisting the other welder about 12 feet away; that the hood was an old one which had been thrown away by some other welder and had a nick in it, and even when the hood was down, he received flashes on account of that defect. At about 3 p. m. his eyes commenc-

ed burning and were very painful and sore; that he went to the emergency cabinet and used an eye wash kept there for that purpose, and returned to work until about 4 o'clock; that after work, he went home and was feeling badly, and immediately went to bed; his wife put packs on his eyes; he slept a short time; about midnight his eyes hurt worse and his wife took him to the hospital where a nurse put something in his eyes which stopped the pain, after which he returned to his home; that the next morning he went to work, but went to the hospital about noon for further treatment. During the next four or five days, he was treated by Dr. Brooks at the hospital. About three months later, he returned to the hospital and Dr. Brooks gave him a prescription. During this time, he received home treatment in the way of packs on his eyes, but did not lose any time from his work until May 2, 1935, at which time he was discharged; however, from and after April 27, 1934, his eyes burned and hurt him; he had a headache all the time, and bought dark glasses a day or so after the accident and wore them constantly because he could not tolerate the light; that he continued his work because Mr. Riley practically "carried him." In other words, Riley did a lot of his work.

Mrs. Hayes testified that two or three days after April 27th, Hayes told her his eyes got so bad that they bothered him and continued to bother him as to his vision. She further testified that he complained of headaches, nervousness, and loss of sleep.

Dr. Head testified that Hayes came to him in September, 1934, for treatment. He was told at that time by his own doctor that the injury to his eyes would likely be progressive and permanent; that he never thought of filing a claim until after he was discharged because he was striving to stay in the service until he had reached the pension age, and because he thought the Phillips Company would let him stay, as he had been with them a long time; that he wanted to work for the Phillips Company and thought they would permit him to do so, and on account of his injuries, would have heart enough to keep him working at something; and that was the only reason he could think of. He admitted that he knew it was necessary to file a claim. Later, he testified that he did not know that he had to file a claim until his attorney informed him on May 9, 1935, that it was necessary. He testified that he knew it

was the custom of the Phillips Petroleum Company to give their injured employees work suitable to their condition; that he would call it a pension. Witness Gluver, a foreman for the Phillips Petroleum Company, testified that he did not know of any fixed rule or policy of the company to give every injured man some kind of work, no matter how much he was disabled, when he was able to get around at all; that lately the company had been keeping the men on compensation until they were well and ready to go to work on his regular job; that he knew of no policy or practice with reference to putting every injured man back on, even if he were crippled.

The court submitted the case upon a great many issues. In response to issue 4-c, the jury found that the 27th day of April was the date upon which the plaintiff sustained his injury, and in response to Question 7-a, the jury found that the injury alone resulted in total incapacity of the plaintiff, which commenced on the 2d day of May, 1935. They further found that the plaintiff had good cause for not filing his claim for compensation between April 27, 1934, and the date upon which it was filed. The contention of the plaintiff, briefly stated, is that the accident and the injury to Hayes did not occur at the same time, but that the injury did not result until approximately one year after the accident. The appellant contends that all this testimony shows that Hayes received a compensable injury on April 27, 1934.

His own testimony, we think, shows that he suffered loss of earning capacity from and after April 27, 1934. According to the testimony of himself and wife, plaintiff suffered loss of vision, continuous headaches, was nervous and unable to sleep or rest well; that another employee "carried him," and did a large part of his work. Dr. Head's testimony shows that Hayes could not have considered his injuries as trivial or temporary. We agree with appellant that the jury's finding that no incapacity resulted until May 2, 1935, is not supported by the evidence. This court held in Texas Employers' Insurance Association v. Wonderley et al., 16 S.W. (2d) 386, 389, that "By injury is meant the state of facts or the condition which first entitles the claimer to compensation."

The jury found that Hayes was injured on April 27, 1934, and the test is, has legal incapacity to work resulted? R.S. art. 8307, § 4a, provides, "Unless the association or subscriber have notice of the injury, no

proceeding for compensation for injury under this law shall be maintained unless a notice of the injury shall have been given to the association or subscriber within thirty days after the happening thereof, and unless a claim for compensation with respect to such injury shall have been made within six months after the occurrence of same; or, in case of death of the employe or in the event of his physical or mental incapacity, within six months after death or the removal of such physical or mental incapacity."

We think the failure of the plaintiff to file his claim within six months from April 27, 1934, precludes him from recovery in this case. The question seems to be settled against appellee in the case of Indemnity Insurance Company v. Williams, (Tex.Com.App.) 99 S.W.(2d) 905, 906, in which case the facts are substantially similar to the facts in the instant case. The court says:

"It appears in testimony that the injury to the hand and eye of Williams resulted at once, at the time of the accident, in the incapacity for work of which he now complains. It further appears that a few weeks after the accident his employer gave him new employment, at substantially the same wages as he had been receiving, which new employment involved much lighter work of a materially different character than that of the employment in which he was engaged at the time of the accident. He continued to perform the duties of this new employment, receiving substantially the same wages as before, until February 28, 1931, when he was discharged by his employer. The trial court charged the jury, in substance and effect, that in such a state of facts, 'the period of incapacity in law is to be reckoned from the date of such employee's discharge or the termination of such employment, if any.' The charge has relation to the matter of time within which an injured employee is required to file a claim with the Industrial Accident Board. The charge, as given, seems to be founded on section 12a of article 8306, which reads as follows:

" 'If the injured employe refuses employment reasonably suited to his incapacity and physical condition, procured for him in the locality where injured or at a place agreeable to him, he shall not be entitled to compensation during the period of such refusal, unless in opinion of the board such refusal is justifiable. This section

shall not apply in cases of specific injuries for which a schedule is fixed by this law.'

"Nothing can be found in the foregoing provisions to justify the charge given. Even if the jury had not found, as they did, that the incapacity suffered by Williams was limited to his hand and eye, but had found that he suffered a general injury of some character, from which his incapacity arose, still the fact that he accepted the new employment, and continued to perform the duties thereof until he was discharged, would not even constitute good cause for his failing to file a claim with the board, within 6 months from the date of the injury, much less would such fact have legal effect to postpone the date his incapacity began."

The evidence is insufficient to support the verdict.

Judgment is reversed and cause remanded.