## FIDELITY UNION CASUALTY CO. v. KOONCE.

### No. 3811.

Court of Civil Appeals of Texas. Amarillo.
May 18, 1932.

Rehearing Denied June 22, 1932.

Dorenfield, Foster & Fullingim, of Amarillo, for appellant.

Wm. F. Nix, of Amarillo, for appellee.

HALL, C. J.

This is an appeal in a workmen's compensation case by Albert Koonce, the claimant, from an award of the Industrial Accident Board.

Omitting the formal parts of his pleading, he alleges that the policy issued by appellant was in full force and effect August 27, 1930. That prior to said date he was an employee of the American Smelting & Refining Company, and had been such employee for more than five years preceding said date. That his compensation rate should be determined by the weekly wages paid him during the year next preceding August 27, 1930. That while in the course of his employment he was seriously injured while working in what is known as the furnace room of the smelting company. That there was not a proper draft to carry away the smoke, fumes, vapors, poisonous gases, and heat from said room. That the place became extremely hot and uncomfortable. That the machinery of the plant or the draft provided for the furnace room failed for some reason to function, and subjected plaintiff to far greater exposure than the general public was exposed to in their places of employment. That, as a part of his duties on said date, he was required to speice the furnaces by passing along the furnace room with a small rod six feet in length, open the condensers which contained the cooking ore as it smelted and cooked in the retorts of the furnace, and that on several occasions on August 27, 1930, when plaintiff speiced the ends of the retorts to permit the blast and fire to reach all portions of the cooking ore, said retorts blew out with an explosion of hot gases, air, smoke, fumes, and poisonous vapors, striking plaintiff in the face, thereby burning and searing plaintiff's lungs and respiratory organs, causing the same to bleed, resulting in immediate illness, pain, and incapacity to labor, as a direct result of which he developed a condition similar in outward symptoms to an advanced case of tuberculosis. That the injuries sustained by him were instant, accidental, and traumatic. At that time he was a strong, robust man, able to perform unusually heavy labor, but as a direct result of the injuries he was permanently and totally incapacitated, so that he could not obtain and retain employment as a laboring man. That his injuries were immediately reported and known to his employer, as well as to the defendant, within the time fixed by law, and reported to the Industrial Accident Board, and within twenty days thereafter filed his notice of injuries, etc.

That on March 27, 1931, after due notice, the said board heard and determined plaintiff's claim and entered its final award, and within twenty days from the date thereof plaintiff gave notice in writing to the board and to the defendant that he would not abide by said award and would file suit, etc.

He further alleged that the case is one where manifest injustice and hardship would otherwise result unless the Association was compelled to redeem by the payment of a lump sum; that he be adjudged permanently and totally disabled, and awarded compensation for 401 weeks at $20 per week, less the required discount for payment in a lump sum.

A trial to a jury upon special issues resulted in a judgment in appellee's favor for compensation at $20 per week for 401 weeks.

By the first two propositions the appellant insists that the court erred in refusing to instruct the jury in its favor, because the evidence was insufficient, and because there was no evidence to show that the smoke, gases, etc., were of such a nature as to burn, sear, and irritate plaintiff's respiratory organs to such an extent as to cause tuberculosis to result therefrom.

The statement of facts consists of nearly 300 pages, and a great deal of the testimony introduced bears upon this issue. No good purpose could be subserved by quoting this testimony, which is sharply conflicting. The plaintiff himself testified that the smoke, gases, etc., blew out of the retorts in his face, were inhaled by him, burning his lungs and respiratory organs, that prior to said time he had never experienced or exhibited any symptom of tuberculosis.

█ Dr. Aronson, who was the physician for the smelting company and had maintained an office at the smelter for more than 3½ years, testified that, when retorts containing superheated ore were opened, flame, gases, and fumes would flare out just as the plaintiff had described. Five other doctors testified and numerous employees, the testimony of some of them being in favor of appellee and others decidedly and emphatically for the appellant. This evidence simply raised an issue which the jury has settled and which we are not authorized to disturb. The first two propositions are overruled.

Propositions numbered 3 to 7, inclusive, attack the verdict of the jury upon the ground that the evidence as to smoke, gases, fumes, etc., is insufficient to sustain the findings that plaintiff's lungs and respiratory organs were injured by the explosions from the retorts to the extent and in the manner alleged by plaintiff.

Because there is evidence to support the jury's findings, we overrule these assignments, for the reasons stated in overruling propositions 1 and 2.

Propositions 8 to 12 bear upon the same issue and present the question here by objections to the issues upon the ground that the uncontroverted evidence showed that the smoke, gases, and fumes generated in the process of smelting zinc were not injurious when breathed by the plaintiff, and would not result in burning his respiratory organs. Appellant further insists that the findings of the jury upon that issue are not supported by any evidence, and that there is no proof to show that the excessive amount of smoke,

gases, etc., was due to a defective ventilating system or extreme heat.

The evidence is such that we cannot disturb the findings of the jury in regard to these matters.

While the appellee's attorney was making his opening argument to the jury, he stated: "You gentlemen wonder why those men from the most lowly that labor and work at the smelter to the best men they have out there, come trooping in here to testify against the man who has clearly lost his capacity to labor by reason of the injury sustained at the smelter, when the defendant, an insurance company, seems to be responsible for the injury. Now, you gentlemen are wondering in your mind why that is. I am going to say to you that it seems strange to me that every man at that smelter, the finger of authority is put on him and he is brought down to this court-house to testify to the truth, so these gentlemen lose their memory completely. They lost their memory about the burst of flame from the retort. Not a one of them had ever heard of such a thing until the gentleman from Jerusalem,—the doctor—"

At this point counsel for appellant objected to the argument, the court sustained the objection, and instructed the jury not to consider the remarks of counsel for any purpose.

■■ The ground of the thirteenth proposition is that the reference to Dr. Aronson as "the gentleman from Jerusalem" was an appeal to race prejudice and was made to inflame the minds of the jury. If appellee's counsel had any such intention, the record fails to show that he succeeded. He referred to Dr. Aronson as a gentleman, which is certainly not objectionable, and, while there is no evidence showing that he ever lived in Jerusalem, that part of the remark was evidently prompted by either Dr. Aronson's name or his personal appearance and pronunciation. These facts were probably as well known to the jury as to counsel. There is nothing in the record from which we can conclude that appellee's counsel was endeavoring to discount Dr. Aronson as a witness, for the reason that, of all the employees introduced as witnesses by the defendants, Dr. Aronson is the only one whose testimony corroborated that of Koonce with reference to the explosion from the retorts. Dr. Aronson's testimony to the effect that retorts did explode and throw out flame, fumes, and gases was about the only material part of his testimony, and, because it corroborated the appellee, we are not willing to hold that appellee's counsel would be so impolitic as to attack Dr. Aronson upon any ground as a witness, nor do we think the statement by appellee's counsel that other witnesses testifying in behalf of the defendants were under the thumb of authority was objectionable. To a certain extent they were under authority.

Counsel did not charge that they had sworn falsely because of that fact, but he had the right to refer to the relations existing between the witnesses and the defendants as affecting their credibility. The inference drawn by appellant from the language used by appellee's attorney was not warranted. He did not state that they would lose their jobs or that they had committed perjury. We are not authorized to draw any such inference from what was said.

■ The trial judge qualified the bill of exception with reference to this part of the argument by saying that counsel for defendants objected to "that style of argument"; that the court sustained the objection and instructed the jury not to consider the argument, having in mind only that part of the argument that referred to the gentleman from Jerusalem, and did not consider the objection as being made to the other part of the argument. The court further stated that he did not consider the other part of the argument as objectionable from a legal standpoint. When counsel for appellee referred to the fact that certain checks which he claimed should have been sent to Koonce were in arrears fourteen months and objection was made to it by defendants' counsel, appellee's counsel withdrew that part of his argument. There is certainly nothing inflammatory, and the courts have no right to prescribe the limits in which counsel may present their facts to the jury in argument, so long as they stay within the record, refrain from personal abuse, and do not appeal to well-known prejudices of the jurors.

Defendants in their answer, without admitting that plaintiff had been injured, alleged: "If it should be so determined that the plaintiff has been injured and further determined as a result of such injury he has been permanently and totally incapacitated, then defendant admits that this is a case where manifest hardship and injustice will inure and accrue to plaintiff if said compensation is not paid in a lump sum in accordance with the terms, conditions and stipulations of the workmen's compensation act and defendant here and now admits that should it be determined that plaintiff has suffered an injury in the course of his employment and the injury has permanently and totally incapacitated him, and here and now tenders to plaintiff under such facts compensation in a lump sum without plaintiff having to produce evidence to establish said fact."

This is appellant's fifteenth proposition: "A statement by counsel for the plaintiff in his opening argument to the jury made in the presence and hearing of the jury, in reply to defendant's objection that the argument as to plaintiff's financial condition as it related to the allowance of a lump sum payment, where such was not an issue under the pleadings, nor the admissions as made by the defendant,

that he expected such argument to be prejudicial, constituted such misconduct on the part of counsel for plaintiff as to be prejudicial and likely result in the rendition of an erroneous verdict."

There is no assignment of error based upon the court's action in permitting the appellee by the testimony of Mrs. Koonce to show their indigent and poverty-stricken condition. The contention of appellant in the argument in its brief is that, in the face of the admission above set out, Mrs. Koonce should not have been permitted to testify that they had four small children, that they owed grocery bills, doctors' bills, and were too poor to buy clothes for the children to send them to school, etc.; that the admission was made for the purpose of avoiding the necessity of introducing this prejudicial testimony.

■■ The rule is that one party to an action is not required to prove facts admitted in the pleadings of the adverse party, but we know of no authority which holds that he is not permitted to introduce proof of facts admitted by the other party, and the appellee contends that in compensation cases all stipulations and agreements of counsel must be approved, either by the Accident Board or by the court and jury, where the case has reached that tribunal. It is not necessary for us, however, to pass upon that question. The only error complained of by this assignment is that the statement of counsel for appellee that he expected the testimony to be prejudicial likely resulted in the rendition of an erroneous verdict. In the absence of an assignment challenging the court's action in admitting Mrs. Koonce's testimony, we are required to consider only the prejudicial effect of the argument made by appellee's counsel. The proposition is not sustained by the record, in that it does not quote counsel's statement in full. The bill of exception shows that counsel stated: "Your Honor, please, I expect it to be prejudicial. It is a fact."

"Prejudicial" has been defined as disadvantageous, harmful, hurtful, injurious. The word may mean merely derogatory; or it may mean actually or naturally and probably bringing about a wrong result. 49 C. J. 1325.

■ When considered as meaning disadvantageous or derogatory, all testimony introduced by a litigant in his behalf or in rebuttal of evidence produced by the other party is prejudicial to the case made by his adversary, and is intended so to be and is rightfully produced. Litigants do not intentionally introduce testimony for the benefit of opposite parties, and, if the testimony elicited from Mrs. Koonce is true, even if it is prejudicial, appellee's counsel was not only justified in introducing it, but it was his duty to his client to do so. No error is shown by this assignment.

■ The appellant advances the proposition that, where special issues are submitted by the court at the request of the defendant, and there is no general charge or instruction by the court as to upon whom the burden of proof rests, the enumeration of certain special issues by the court, with an instruction that the burden of proof as to the issues enumerated is upon the plaintiff, places upon the defendant a greater degree of proof as to the special issues submitted on behalf of the defendant than is required by law.

This is an abstract proposition, and is not entitled to consideration for that reason, and for the further reason that it is not sustained by the record. The record discloses that the court submitted certain special issues and then charged the jury that the burden was on the plaintiff to establish the affirmative of certain issues, giving their numbers, by a preponderance of the evidence.

■ After inspecting the charge, counsel for appellant prepared certain other issues which the court was requested to give. In the issues prepared by counsel for appellant and which were given by the court, there was no mention whatever as to the burden of proof with reference thereto, and this is the ground of complaint under this proposition. It is true that the Workmen's Compensation Law (Rev. St. 1925, art. 8307, § 5 as amended Acts 40th Leg. (1927), c. 223, § 1) places the burden of proof upon the injured party in the trial de novo before the court on an appeal from the award of the Industrial Accident Board, but this fact does not alter the rule that a party who has invited an error in requesting instructions cannot complain in the appellate court. When appellant requested the submission of certain issues, and its request carried no reference to the burden of proof, the request was legally insufficient for that reason, but the rule is that one who has requested a special issue to be submitted to the jury is estopped on appeal to assert that there was error in its submission, because of its legal insufficiency. National Life & Accident Ins. Co. v. Bunton (Tex. Civ. App.) 10 S.W.(2d) 733; Woodward & Hardie, Inc., v. McMillan et ux. (Tex. Civ. App.) 34 S.W.(2d) 357; 3 Tex. Jur. 1034; Speer's Law of Special Issues, § 253.

By the seventeenth and eighteenth propositions the appellant challenges the sufficiency of the notice in order to give the court jurisdiction.

■ These propositions are urged evidently upon the mistaken idea that the date of the accident is the date of the injury for the purpose of bringing suit.

As said by this court in Texas Employers' Ins. Ass'n v. Wonderley, 16 S.W.(2d) 386, 389: "By injury is meant the state of facts or the condition which first entitles the claimant to

compensation. In this case the injury did not develop until more than 2 weeks after the accident and the claimant suffered no loss of his earning capacity until that time."

The evidence is clear in the instant case as to when the injury became apparent, and with reference to the notice given there can be no question as to the jurisdiction of the court.

The issue of occupational disease was submitted to the jury, the finding is against appellant's contention, and the evidence supports the finding.

The court correctly defined "accidental injury."

The issues of negligence and contributory negligence are not in the case.

As said in 28 R. C. L. 788, § 82: "The most striking feature of the compensation act is, perhaps, the provision abolishing the common law doctrines of negligence, contributory negligence and assumption of risk."

In the leading case of Middleton v. Texas Power & Light Co., 108 Tex. 96, 185 S. W. 556, 560, Judge Phillips says: "By the Act a fixed compensation is payable to him upon the mere happening of any injury in the course of the employment * * * without reference to any negligence on the part of the employer or his servants, and without regard to defenses available to the employer at common law."

What has been said disposes of all of the assignments. We find no reversible error, and the judgment is affirmed.