## FOX v. TEXAS EMPLOYERS' INS. ASS'N.
### No. 1534.

Court of Civil Appeals of Texas. Eastland.
March 27, 1936.

Rehearing Denied May 8, 1936.

Grisham Bros., of Eastland, for appellant.

Scarborough & Ely, of Abilene, for appellee.

LESLIE, Justice.

This is a workmen's compensation case. While in the course of his employment as an employee of Johns-Manville, Inc., J. A. Fox, on November 15, 1928, was accidentally injured in his foot as the result of a fall of about six feet into a tank which he and other workmen were covering.

The claim for compensation was not filed with the Industrial Accident Board until April 5, 1934, about five years, four months, and twenty days after the injury. Fox' claim was rejected by the board, and he instituted this suit to set aside that ruling, and to recover compensation for total and permanent incapacity, etc. At the conclusion of the evidence the trial court instructed a verdict in favor of the defendant, the Texas Employers' Insurance Association. Fox appeals and assigns as error the action of the court in instructing said verdict and entering a judgment thereon.

It is appellant's contention, as asserted by a group of assignments, that he alleged and proved good cause for not filing his claim with the Industrial Accident Board prior to April 5, 1934. He asserts that the evidence at least raised such issue and that same should have been submitted to the jury. It is his theory that the six months in which to file the claim with the board may be predicated upon the incapacity existing about April 5, 1934.

We find it unnecessary to discuss the different theories upon which the plaintiff seeks to justify his delay for filing his claim for compensation with the Industrial Accident Board. It is well settled by the decisions in this state that if a claim for compensation be not filed with the Industrial Accident Board within six months after the accidental injury is received (in this case November 15, 1928) as required by the statute, the claimant must then allege and show good cause excusing the delay until the claim is filed. Article 8307, § 4a, Vernon's Ann.Civ.St.; Holloway v. Texas Indemnity Ins. Co. (Tex.Com.App.) 40 S.W.(2d) 75; Ocean Accident & Guarantee Corporation v. Pruitt (Tex.Com.App.) 58 S.W.(2d) 41; Petroleum Casualty Co. v. Fulton (Tex. Civ.App.) 63 S.W.(2d) 1068; Durham v. Texas Indemnity Ins. Co. (Tex.Civ.App.) 60 S.W.(2d) 255; Texas Indemnity Ins. Co. v. Williamson (Tex.Civ.App.) 59 S.W.(2d) 232; Texas Employers' Ins. Co. v. Jones (Tex.Civ.App.) 70 S.W.(2d) 791; Texas Employers' Ins. Ass'n v. Eaton (Tex.Civ. App.) 69 S.W.(2d) 569; Morgan v. Petroleum Casualty Co. (Tex.Civ.App.) 40 S.W. (2d) 205; Texas Indemnity Ins. Co. v. Bailey (Tex.Civ.App.) 297 S.W. 1042; New Amsterdam Casualty Co. v. Scott (Tex.Civ. App.) 54 S.W.(2d) 175 (writ ref.); New Amsterdam Casualty Co. v. Chamness (Tex.Civ.App.) 63 S.W.(2d) 1058 (writ ref.); Texas Employers' Ins. Ass'n v. Wallace (Tex.Civ.App.) 70 S.W.(2d) 832; Texas Employers' Ins. Ass'n v. Whiteside (Tex.Civ.App.) 77 S.W.(2d) 767, 768.

The last four cases were decided by this court. In the Whiteside Case we said, concerning the proposition of pleading and proving good cause in such cases: "This is a jurisdictional matter. Strict compliance with the statutory provision for the filing of such claims is required, and, without allegations and proof of good cause for failure to comply with this provision, the courts have no jurisdiction of the cause." In that opinion we gave our interpretation of article 8307, § 4a, and article 8309, § 1, R.S.1925; the latter defining the term "injury." The construction of these statutes there given is, we think, applicable to the facts of the instant case, in so far as the questions of good cause and the proper diligence in giving notice and filing claim are involved. Such conclusions are clearly required by the above group of authorities, several of which are by the Supreme Court.

Ordinarily, the existence of good cause justifying delay in giving the statutory notice or filing claim with the board is one of fact for the determination of the jury; but, like other issues of fact, the evidence sometimes is insufficient to raise any issue at all, and it becomes the duty of

the court in such cases to so hold and so charge the jury. New Amsterdam Cas. Co. v. Keller (Tex.Civ.App.) 62 S.W.(2d) 637; Maryland Cas. Co. v. Johnson (Tex. Civ.App.) 87 S.W.(2d) 342.

In the instant case and based upon the plaintiff's own testimony, his injury was manifest and pronounced from the time he received it. The discomfort arising from the injury and incapacity resulting therefrom progressively increased, from the date of the injury (November 15, 1928), although he continued to perform some services for the company until about January 5, 1931.

In 1932 he undertook to raise a crop, and was unable to do so because of the growing effects of the injury. He undertook to farm in 1933 with the same results. Again finding himself unable to farm and labor in 1934, he appears to have consulted Dr. Ferguson, an Eastland physician, whose testimony, in part, supports his alleged cause of action. Following the examination and consultation given by this physician near the first of April, 1934, the plaintiff gave notice of his injury and filed his claim on April 5, 1934, with the Industrial Accident Board, predicating same on the incapacity realized at that date, or about March 1, 1934.

The plaintiff testified that he received his injury November 15, 1928; that it was accompanied by pain and immediate swelling; that it increased from the date of the injury practically to the filing of the claim and trial; that it had "never left" him. His testimony covers many pages, and for obvious reasons cannot be incorporated in this opinion. Parts of it, in substance, and literally where indicated by "Q." and "A.," are as follows:

"Q. * * * You have alleged in this petition that certain conditions resulted from this injury, how do you know that your present condition resulted from that injury? A. Because it is gradually growing worse and has never left me. My foot swells up every time I am on it to amount to anything so I can hardly get about.

"Q. Has it done that ever since you were first injured? A. Yes.

"Q. Have you ever been able to do any work since that time that your foot did not swell up on you? A. No sir.

"Q. How long did you stay with this company you were working for at the time your injury occurred? A. Well, I was

laid off January 5, 1931. However, during that time we was off and be out for a week or two weeks at a time, just waiting for another job. * * *

"Q. And during all that time you were having trouble with that foot? A. All the time when I would be working it would swell up and when I would be off for a few days then the swelling would go down until I would go back to work, then I would have the same thing over again. * * *

"Q. After you quit the company in 1931, what work did you do then? A. Not much of anything. I tried to farm a little and tried to pull bolls, but had no success at it on account of this foot.

"Q. Did you do any plowing? A. I tried walking and plowing but just as soon as I tried it I had to give it up. * * *

"Q. Where was this farm, Mr. Fox, that you were working on in 1931? A. I wasn't on a farm in 1931. I was in 1932 and 1933. I was out here with J. D. Parsons and tried to make a crop but I had to quit.

"Q. From January 5, 1931 until you started to make this crop in 1932 what did you do? A. Nothing. * * * .

"Q. What did you do when you got through helping make this crop out here with J. D. Parsons (1932)? A. We didn't make the crop. I started in and had to quit on account of my foot.

"Q. What month and year was that? A. I started in 1932 to try to make a crop and I was there with him a part of 1933. * * *

"Q. Now in March 1932 you attempted to farm, did your foot begin hurting you? A. It began swelling up on me.

"Q. Did you then stop work? A. Yes, I just quit farming and didn't make no crop at all.

"Q. You quit trying to farm in April 1932? A. Yes sir.

"Q. What did you do, Mr. Fox, from April, 1932, until the next year? A. I didn't do anything until this last April (1934) when I started to try farming again and the same thing over again.

"Q. That was in 1933? A. No, this year, 1934, when I started again, walking again and plowing and I had to quit.

"Q. Didn't you say you helped Mr. Parsons again in 1933? A. Yes, in that spring I was going to hire out to him and

help to put up his land, but I couldn't on account of my foot, I couldn't do this plowing.

"Q. Did you help him a little before you found your foot wouldn't stand the work? A. No, I just plowed about three hours time.

"Q. That was in the spring of 1933? A. Yes sir. * * *

Q. When did you first decide to file this claim for compensation? A. I decided to do that way back yonder somewhere about a year ago or longer; but was sometime after I had decided to do it before I ever filed it. * *. *

"Q. It continued to hurt you from the time you first received the injury? A. Yes sir, and right up to now.

"Q. Was your foot hurting you so badly you could hardly walk from the day of this injury until the present time? A. Yes, it hurt all the time. If I put any weight on it or run on it it hurt worse, but when I wasn't working on it it doesn't hurt so bad; but it pains me all the time.

"Q. Has that condition existed from the day of your injury until the present? A. Yes sir. * * *

"Q. I would like for you to state, Mr. Fox, whether or not you have ever been able to do two or three days' work in succession since the day of this injury without your foot swelling and paining you a lot. A. No sir. I never have been able to. * * *

"Q. Since the day of that injury, Mr. Fox, have you or not done quite a bit of manual labor (1931)? A. Not since the company laid me off. I have done nothing in the way of manual labor until this job at Ranger. I wasn't able and couldn't do nothing. * * *

"Q. And it hurt you from the date the accident occurred? A. Yes sir. * * *"

J. D. Parsons, a witness offered by the plaintiff, and whose lands the plaintiff undertook to cultivate in 1932 and 1933, testified that the plaintiff during said time suffered considerably from said injured foot, and among other questions asked were the following:

"Q. In 1933, did he work any for you? A. Yes sir * * *

"Q. How did his foot act that year? A. About the same way.

"Q. Did he have to get up with it at night? A. He did. * * *

"Q. He continued to complain of it in 1933 hurting him every night, hurting him all the time? A. Yes sir.

"Q. And he gave up his crop in 1932 because he wasn't able to farm and on account of his foot? Will you tell the jury that? A. Yes sir, I will."

All the plaintiff's witnesses testified to the serious and disabling nature of the injury during said period of time. It is unnecessary to further set out their testimony.

Considering as a whole the testimony, relating to the appellant's consultations with the three different physicians, the first at Big Spring when injured in 1928, the second at Mexia, early in 1929, and the third at Baton Rouge, La., in 1930, discloses nothing said by any physician that would mislead or cause the plaintiff to underestimate the seriousness of his injury. Especially is this true in light of the facts that neither doctor's treatment gave any special relief according to appellant's testimony, but the discomfort from the injury increased. The doctor at Mexia told the plaintiff "there may be something jerked loose in there * * *." While testifying the plaintiff was asked: "Q. Did any doctor tell you you would be permanently disabled from that foot injury besides Dr. Ferguson [consulted about April 1934]? A. The doctor at Mexia said it could be. I said 'What is wrong with that foot' and he said 'It is a sprain I think but we don't know every time,' and I asked him if he thought I could go back to work and he said 'go ahead.'" At another place he testified: "A. I asked him. I said 'Do you think I could go back to work' and he said 'Go ahead if you feel like it.'" This consultation took place in 1929. There is no basis for good cause in this character of testimony.

Injured as he was on November 15, 1928, and apparently suffering an increasing discomfort and incapacity, actually culminating in his inability to make the crop in 1932 and 1933, it is not believed that the law excused him for his failure to file his claim prior to April 5, 1934, when he filed the same. By the appellant's own testimony he fails to show good cause excusing him for not filing his claim until that date. The testimony conclusively shows that he failed to exercise ordinary care to protect his rights, if any, under the law and the terms and provisions of the policy of insurance. New Amsterdam

Cas. Co. v. Chamness (Tex.Civ.App.) 63 S.W.(2d) 1058 [2, 3] (writ ref.); Maryland Cas. Co. v. Johnson (Tex.Civ.App.) 87 S. W.(2d) 342; Security Union Ins. Co. v. Hall (Tex.Civ.App.) 37 S.W.(2d) 811 [4, 5]. An injured employee may not under the facts of this case omit or refuse compliance with the statutory requirements as to giving notice and filing claims, etc., and expect the courts to reward his laches. Maryland Cas. Co. v. Johnson, supra.

The court correctly instructed a verdict, and the judgment entered thereon is affirmed.

GRISSOM, J., disqualified and not sitting.