## WILLIAMS v. SAFETY CASUALTY CO.
### No. 1558.

Court of Civil Appeals of Texas. Eastland.
May 29, 1936.

Rehearing Denied Oct. 16, 1936.

Grisham Bros., of Eastland, for appellant.

Conner & Conner, of Eastland, for appellee.

FUNDERBURK, Justice.

Cecil T. Williams by this suit sought recovery from Safety Casualty Company, insurance carrier for Magnolia Petroleum Company, of compensation for personal injuries alleged to have been received by him while in the course of his employment with said last-named company, and alleged to have resulted in his total permanent disability. According to his allegations, Williams, on or about November 29, 1933, assisted in loading 12½-pound sacks of carbon black upon a railway car. The sacks were stacked in a building to a height of about 15 or 20 feet. One employee threw the sacks down to Williams, who caught them in his arms and in turn passed them on to other employees to be finally placed in the car.

The strain incident to this operation and the impact of the sacks against the upper part of his abdomen constituted the accident from which resulted, according to the allegations, an aggravation of the diseases of colitis and gastritis, with which he was afflicted, to such extent as to amount to total and permanent disability. Such disability was alleged to have begun about January 1, 1934.

The defendant, in addition to exceptions and a general denial, specially alleged that plaintiff's injuries, if any, resulted solely from certain described pre-existing injuries and diseases.

The jury to whom the case was submitted on special issues found that plaintiff received the injuries alleged, but that the resulting condition was not one of total incapacity, but permanent partial incapacity to the extent of 10 per cent. A part of the verdict was to the effect that the injury occurred on or about November 29, 1933, either alone or in conjunction with previous disease or diseases causing the plaintiff's condition of incapacity, and that the diseased condition with which the plaintiff was afflicted prior to November 29, 1933, was not the sole cause of his present condition of incapacity. It was further found that the plaintiff's incapacity existed since the 1st day of January, 1934.

Other facts which the verdict found were that plaintiff did not within less than 30 days from the date of his injury tell J. A. Upton and/or Mr. Maxwell that he had sustained an injury on account of handling the carbon black on the occasion in question; that within less than 30 days from the date he ceased to work for the Magnolia Petroleum Company plaintiff did tell Dr. White and defendant's agent Westlage that he had sustained an injury on account

of handling the carbon black on the occasion in question. Other findings dealt with the question of average daily wage and the wage received by the plaintiff during the previous year. Based upon the verdict the court rendered judgment for plaintiff for $91.84 and $323.37, with provisions that the latter sum be paid in weekly installments of $1.38 (so stated in the judgment). Both parties appealed.

The parties will be referred to as plaintiff and defendant, the same as in the trial court.

■ The action or ruling of the court constituting the subject matter of plaintiff's first assignment of error is, in substance and effect, the failure or refusal of the court to render judgment for plaintiff awarding him recovery for total permanent disability. This contention is based upon the theory that the undisputed evidence established conclusively that appellant was totally and permanently disabled as the combined result of previous disease and the alleged injury. This contention cannot be sustained. One reason, sufficient in itself, why it cannot is that the undisputed evidence did not show that plaintiff was totally and permanently disabled. Dr. White, a witness for the defendant, testified:

"Q. Have you any opinion as to whether this man is totally disabled or not? A. Yes sir. I found nothing to cause total disability. * * *

"Q. In your opinion this man is all right? A. I saw nothing except what I showed in my report. You have got that. In the last trial I gave the complete findings.

"Q. You mean you testified to that on a former trial? A. Absolutely.

"Q. So you don't find anything wrong with this man at all? A. No sir, only adhesions. * * *

"Q. Did you find any evidence of gastritis? A. No sir.

"Q. Nor colitis? A. No, only adhesions which is a subjective symptom."

This testimony we think must be held to have raised an issue of fact as to whether the plaintiff was totally disabled.

■ Independently of the above, the proper predicate is not shown for complaint of the court's action (or inaction) assigned as error, even if the undisputed evidence had shown total permanent disability. Plaintiff made no objections of any kind to the special issues. He requested no peremptory instruction of a verdict in his favor. He made no motion for judgment notwithstanding the verdict, as provided for in R.S.1925, art. 2211, as amended by Acts 1931, c. 77, § 1 (Vernon's Ann.Civ.St. art. 2211). Under these circumstances the general allegation of the assignment that "the court erred in not rendering such judgment" is not a sufficient specification of error.

It is next contended that the court erred in not setting aside the finding of the jury to the effect that the condition of the plaintiff, Cecil T. Williams, is not one of total incapacity; the reasons assigned being that such finding "is wholly unsupported by the evidence and contrary thereto." We have already above quoted testimony which, as already said, in our opinion raised an issue of fact of total disability.

■ We must likewise overrule the contention that such finding of the jury was the result of a misunderstanding on the part of the jury. We cannot give assent to a proposition that verdicts of juries may be impeached by evidence to show that the jurors did not understand the issues or the effect of their findings thereon. 31 Tex. Jur. p. 61, § 53.

■ The insistence that the court erred in overruling the motion for new trial because there was no testimony to authorize a negative finding upon issue No. 4–A is also believed to be without merit. Issue No. 4–A was: "Do you find from a preponderance of the evidence that the condition of the plaintiff Cecil T. Williams is one of partial incapacity as that term is defined herein?" The answer was "Yes." From this it should be apparent that, if there was any error, it was not one as to which the fact was material, if true that the evidence would not have supported a different answer. If it was the purpose of the plaintiff to insist that the affirmative of the issue was established as a matter of law, and therefore should not have been submitted, no reversible error would be shown, since the jury found in accordance with such fact.

■ The next assignment of error is: "The answer to special issue No. 4–B of 10 per cent is upon its face wholly unsupported by the testimony and the court erred in overruling plaintiff's motion for new trial pointing out said matter." The issue referred to was: "From a preponderance of the evidence, what percentage of

incapacity, if any, do you find that the plaintiff has suffered?" What question does the assignment of error present? This query is suggested from a consideration of the fact that plaintiff contends that total disability existed. The assignment of error could only raise a question of whether there was any evidence to show 10 per cent. disability. It implies that there was no such evidence. If plaintiff can insist, as he does, that the undisputed evidence showed permanent and total disability, how can he insist that there was no evidence to show even a 10 per cent disability? Evidently the question presented by the assignment of error is not the one intended to be urged.

The same observation disposes of the next assignment of error referring to the same special issue and alleging that it is unsupported by the great preponderance of the evidence, and for that reason the court erred in not granting a new trial.

■ As to the further contention that the answer to the same special issue is upon its face the result of a complete lack of knowledge upon the part of the jury of legal principles and/or misunderstanding as to the amount to which plaintiff was entitled to recover, etc., what was said of a previous assignment that it involves an impeachment of the jury's verdict in a manner not permitted by law is equally true of this. In addition, it may be said that in this case, submitted upon special issues, it was not the function of the jury to know legal principles or even to understand anything about the amount which plaintiff was entitled to recover, other than amounts of which the issues made inquiry. The sole function of the jury was to determine questions of fact.

The assignment of error dependent upon the assertion that the jury tried to eliminate from their finding of the percentage of incapacity such as was due to previous or subsequent diseases and concurring diseases must be overruled because the record does not show that the jury did the thing stated. On the contrary, the jury's findings that the alleged injury "whether alone or in conjunction with previous disease or diseases caused the plaintiff's condition of incapacity," and that "the diseased condition with which the plaintiff was afflicted prior to November 29, 1933 * * * was not the sole cause of his present condition of incapacity," strongly suggest that the finding of 10 per

cent. incapacity did not exclude the amount of enhancement of the injury caused by disease or previous injuries.

■ Little space need be devoted, we think, to the contention that the jury erred in finding the average daily wage to be $4.35 when it should be $4, and his total annual wage $1,500 when it should have been $1,441.32. The errors, if any, were in favor of the plaintiff, and the defendant makes no challenge of the judgment upon such ground.

We have considered all the assignments of error not specifically mentioned and the propositions and arguments under same, and without further discussion overrule all of them, except the one next considered.

■ In his argument to the jury, counsel for defendant said: "In this case the plaintiff sued for and is asking for $8,000 damages on account of this alleged accident and that is what he will get if you answer that he is permanently and totally disabled from this injury." Objection was made on the ground that it improperly advised the jury of the effect of their answers. The argument, we think, was undoubtedly subject to that objection. It seems to be settled that an argument in a case submitted on special issues, which informs the jury of the legal effect of their answers, is material error. McFaddin v. Hebert, 118 Tex. 314, 15 S.W.(2d) 213; Fidelity Union Cas. Co. v. Cary (Tex.Com. App.) 25 S.W.(2d) 302; Dallas Ry. & Terminal Co. v. Bankston (Tex.Com.App.) 51 S.W.(2d) 304; Texas & P. R. Co. v. Edwards (Tex.Com.App.) 36 S.W.(2d) 477. We use the term "*material* error" in the sense we had occasion to consider and discuss in Williams v. Rodocker (Tex.Civ. App.) 84 S.W.(2d) 556. Sometimes it is stated that such an argument is error, unless the jury is presumed to know the effect of their answers. It seems to us more accurate to say that it is material error for counsel in argument to inform the jury of the effect of their answers; but that the error will be regarded as harmless, when referring to issues, the effect of the answers to which the jury is presumed to know. It cannot be presumed, we think, that the jury knew that a finding of total and permanent disability would require judgment for the plaintiff for $8,000. It is not at all unlikely, we think, that the jury may have been influenced by such argument to find against the existence of total disability, considering that so great a per

cent. of the disability was attributable to the concurring effect of disease and other injuries. At least, it cannot be said that the record certainly and affirmatively shows ·the contrary, which is the true test.

By cross-assignments of error (denominated in the brief counter assignments) the defendant makes the contention that the judgment should have discharged the defendant from any liability and the case should have been dismissed, or judgment rendered for the defendant. The basis of this contention is that the plaintiff had the burden of establishing that within 30 days from the date of the injury the insurer or said employer had knowledge of the injury, or that notice of such injury was given within said time to the one or the other. If we regard the injury as having been received on November 29, 1933, as found by the jury, there was an issue submitted and finding thereon that no notice of the injury was given within 30 days thereafter. No issue was submitted designed to elicit the finding that the employer or insurance carrier had such notice independently of being notified by the employee. If January 1, 1934, the date of the beginning of plaintiff's disability, as alleged by plaintiff and found by the jury, be regarded as the date of the injury, issues submitted were found to the effect that notice of the injury was given within 30 days from the date of the injury. The propositions under the cross-assignments of error point out that there was no pleading or proof of good cause for failure to give notice within 30 days from the date of the injury, that there was no evidence that the employer or insurer had any actual knowledge of the injury, if any, within 30 days from the date it was received. It appears therefore that if November 29, 1933, was the date the injury was received, an issue which plaintiff had the burden of establishing in order to 'recover was not submitted and no assignment of error is presented complaining of any refusal of the court to submit it.

▅▅▅▅ Upon the question of when an injury is received within the meaning of the requirement of R.S.1925, art. 8307, § 4a, that: "Unless the association or subscriber have notice of the injury, no proceeding for compensation for injury under this law shall be maintained unless a notice of the injury shall have been given to the association or subscriber *within thirty days after the happening thereof,*" etc.

(italics ours), there is some difference of opinion reflected in the decisions. The statutory definition of injury is: "Damage or harm to the physical structure of the body and such diseases or infection as naturally result therefrom." Article 8309, § 1. By the terms of the statute, the definition applies to "injury" and "personal injury" as synonymous terms. From the definition it is apparent that an injury from its incipiency until it can be spoken of in the past perfect tense as having been received may extend over a considerable period of time—months or even years. The question is, does the 30 days' time in which the employee is to give notice that he has received an injury (in the absence of the employer or insurance carrier having such knowledge) begin with the inception of the injury, or when it has become an accomplished fact, or at some intermediate stage of its progress, as, for instance, when incapacity therefrom develops as held in Texas Emp. Ins. Ass'n v. Wonderley (Tex.Civ.App.) 16 S.W.(2d) 386; Texas Emp. Ins. Ass'n v. Fricker (Tex. Civ.App.) 16 S.W.(2d) 390; Fidelity Union Cas. Co. v. Koonce (Tex.Civ.App.) 51 S.W.(2d) 777. We think the true answer to this question may be found in the use of the term "injury" (or "personal injury") in its various connections as found in the workmen's compensation statute (R. S.1925, arts. 8306 to 8309, inclusive, as amended Vernon's Ann.Civ.St. art. 8306 et seq.).

The idea that "injury" and "incapacity" are the same is precluded by the provisions of R:S.1925, art. 8306, § 6, wherein it says: "If incapacity does not follow at once after the infliction of the injury or within eight days thereof but does result subsequently," etc. Here the two terms are so employed that they cannot be identical in meaning. In many connections it is clear that incapacity is a result of which injury is the cause. For instance, see Id. § 15. In no true sense can a thing be either the result or the cause of itself.

Any compensable injury must be preceded by accident. Middleton v. Texas P. & L. Co., 108 Tex. 96, 109, 185 S.W. 556; Southwestern Surety Ins. Co. v. Owens (Tex.Civ.App.) 198 S.W. 662; Texas Emp. Ins. Co. v. McGrady (Tex.Civ.App.) 296 S.W. 920; Barron v. Texas Emp. Ins. Ass'n (Tex.Com.App.) 36 S.W.(2d) 464; Choate v. Hartford Acc. & Ind. Co. (Tex. Civ.App.) 54 S.W.(2d) 901. Causes must

precede their results. Article 8307, § 7, R.S.1925, provides for the making of reports which undoubtedly are designed to accomplish the same purpose of the notice in question. There are simply two independent provisions by which insurers, directly or through their insured employers, may have early notice of the results of accidents which may be made the basis of claims for compensation. The reports, above referred to, are required to be made "within eight days after the occurrence of an *accident* resulting in an injury to an employee, causing his absence from work for more than one day" etc. (Italics ours.) These reports, among other things, shall "state the date *and hour of receiving such injury."* (Italics ours.) There is no room for argument that these reports are required to be made within 8 days after the incipiency of an injury. The provision evidently contemplates that injury follows accident immediately, regardless of the duration of the injury, or the time of the onset of any such incapacity, if any, as will render the injury compensable. It would be wholly unreasonable we think to hold that the 8-day period within which these reports are required to be made begins at a different time, or upon the happening of a different event, from that in which the 30 days' time begins, in which the employee is required to give notice of an injury. This is in accord with a number of opinions of this and other courts. Texas Emp. Ins. Ass'n v. Whiteside (Tex. Civ.App.) 77 S.W.(2d) 767; J. A. Fox v. Texas Emp. Ins. Ass'n (Tex.Civ.App.) 94 S.W.(2d) 569; Texas Emp. Ins. Co. v. Jones (Tex.Civ.App.) 70 S.W.(2d) 791; Texas Emp. Ins. Ass'n v. Wallace (Tex. Civ.App.) 70 S.W.(2d) 832; New Amsterdam Cas. Co. v. Scott (Tex.Civ.App.) 54 S.W.(2d) 175; Morgan v. Pet. Cas. Co. (Tex.Civ.App.) 40 S.W.(2d) 205; Ocean Acc. & Guarantee Corp. v. Pruitt (Tex. Com.App.) 58 S.W.(2d) 41.

 Defendant, under its cross-assignments of error, has assumed and discharged the burden of showing that it was not established by the undisputed evidence that the defendant or employer had knowledge of the injury within 30 days from November 29, 1933. On the contrary, it is shown that independently of the issue that plaintiff gave such notice, which was resolved against him by the verdict of the jury, there was no evidence that the employer or the defendant had knowledge of the injury. Under these circumstances, the verdict of the jury was not sufficient to warrant a judgment for the plaintiff. Even if it could be said that there was an issue of fact as to whether the employer or defendant had knowledge of the injury, the failure of the plaintiff to request the submission of the issue in the absence of its submission constituted a waiver of any error in the failure of the court to submit it. Miller v. Fenner, Beane & Ungerleider (Tex.Civ.App.) 89 S.W.(2d) 506; Harris v. Thornton's Dept. Store (Tex.Civ.App.) 94 S.W.(2d) 849, and authorities cited.

We are therefore of the opinion that the judgment of the court below should have been one dismissing the case, that for that reason the judgment from which the appeal is prosecuted should be reversed and judgment here rendered dismissing said cause, and it is accordingly so ordered.

### On Rehearing.

In deciding this case we considered carefully the question of whether there should be a remand or a rendition of final judgment. In the opinion, however, there was no discussion of the point. We were in doubt of our being able to add anything of material benefit to the great volume that has been written on the subject. In view, however, of appellant's earnest and able argument contending that the case should be remanded for another trial, we have decided to state, as briefly as we may, the reasons for our said former action. This will involve construction of statutory provisions prescribing our duty, as well as decisions of the courts on the subject.

 In the investigation we have examined hundreds of decisions and have read each case to which a reference indicated that it would probably be helpful. The cases may be classified into four groups: (1) It appears there are a great many decisions to the general effect that when an appellate court, in this state, reverses the judgment of a trial court, final judgment will be rendered, if the case appears to have been fully developed, and a remand will be ordered if it does not appear that the case has been fully developed. (2) A great many other decisions seem to recognize as the determinative factor to be considered in rendering judgment or ordering a remand the question of whether, in the opinion of the court, justice will be better subserved by remanding. (3) Perhaps as many other decisions appear to make the same question turn upon whether the record shows that the case has been

tried on a wrong theory; ordering a remand if it so appears. (4) Still other decisions recognize the determinative question to be whether it appears from the record that any matter of fact is necessary to be ascertained, or whether the damage to be assessed or the matter to be decreed is uncertain.

It is significant, we think, that we have been unable to find any case which calls attention to the fact that there is one statute upon this subject having no reference to the Supreme Court, which prescribes the duty (and therefore the power) of courts of civil appeals, and another statute, materially different in some of its provisions, having no reference to courts of civil appeals, which prescribes the duty (and power) of the Supreme Court. Such statutory provisions are R.S.1925, arts. 1856 and 1771. Said article 1856, applying exclusively to courts of civil appeals, provides: "When the judgment or decree of the court below shall be reversed, the court shall proceed to render such judgment or decree as the court below should have rendered, except when it is necessary that some matter of fact be ascertained or the damage to be assessed or the matter to be decreed is uncertain, in either of which cases the cause shall be remanded for a new trial." Article 1771, applying exclusively to the Supreme Court, provides: "In each case, the Supreme Court shall either affirm the judgment, or reverse and render such judgment as the Court of Civil Appeals should have rendered, *or reverse the judgment and remand the case to the lower court, if it shall appear that the justice of the case demands another trial.*" (Italics ours.) It is obvious from a reading of these provisions that the above italicized clause of article 1771 purports to confer upon the Supreme Court a power which the mandatory terms of said article 1856, by clear and necessary implication deny to courts of civil appeals. Article 1856 is just as mandatory wherein it directs a court of civil appeals to render such judgment as the court below should have rendered as it is that, when the exceptional circumstances exist, it shall remand the case, and vice versa. In other words, the imperative command of the statute to courts of civil appeals is that they shall "render such judgment or decree as the court below should have rendered" unless "it is necessary that some matter of fact be ascertained or the damage to be assessed or the matter to be de-

creed is uncertain." Its equally imperative command is that, if there be "some matter of fact to be ascertained or the damage to be assessed or the matter to be decreed is uncertain," the cause "shall be remanded for a new trial." There would seem to be no room for a difference of opinion that, if this statute be valid, it vests no discretion in courts of civil appeals as to rendering final judgment or remanding a case, except, of course, such as is involved in determining whether or not there be "some matter of fact to be ascertained or the damage to be assessed or the matter to be decreed is uncertain." It was so held in Sovereign Camp, W. O. W. v. Patton, 117 Tex. 1, 295 S.W. 913. In so holding the Supreme Court in effect overruled contrary dicta of that court in Patrick v. Smith, 90 Tex. 267, 38 S.W. 17, 21, wherein it was said: "If there be no evidence to sustain a judgment upon an issue material to a recovery, the appellate court may, *in its decretion,* render judgment for the appellant, or remand the cause for a new trial." (Italics ours.) No question of discretionary power was before the court. Upon that question, which was presented for decision in the Patton Case, supra, the court said: "Their proper discretion consists in their right to determine when the exception to the general statutory rule applies, and not in their right to apply the rule, or not, as they deem best, where the record is such as to clearly bring the case within the general terms of the statute."

But looking to article 1771 in so far as it relates to the subject under consideration, it clearly commands the Supreme Court to do one of two things. It therefore vests a discretion to do either. Its command is that the Supreme Court shall "reverse and render such judgment as the Court of Civil Appeals should have rendered," or it shall "reverse the judgment and remand the case to the lower court, if it shall appear that the justice of the case demands another trial." It cannot be said that the discretionary power thus granted includes the power, upon reversing the judgment of a court of civil appeals, to render final judgment in any case unless the court of civil appeals should (and therefore could) have done so. That being true, the effect is to deny authority to the Supreme Court upon reversing the judgment of a court of civil appeals to render final judgment in any case wherein it is necessary that "some matter of fact be ascertained or the damage to be

assessed or the matter to be decreed is uncertain." As already said, a court of civil appeals could not properly render final judgment when such conditions exist, and, the power of the Supreme Court to render final judgment being limited to the rendition of such judgment as the court of civil appeals should have rendered, could not do so. It therefore appears that the above italicized clause of said article 1771 is meaningless, unless it vests a discretion in the Supreme Court which is not given to courts of civil appeals.

If so far we are correct, then it necessarily follows that a court of civil appeals when it reverses a case wherein it is not necessary that "some matter of fact be ascertained and the damage to be assessed or the matter to be decreed" is not uncertain, cannot properly remand the case simply because it may appear that the ends of justice will better be subserved thereby. The Legislature has itself, in effect, declared that the ends of justice will be better subserved by rendering the judgment which the trial court should have rendered if the record shows what that judgment should have been. It should be regarded as elementary that when the law speaks discretion ends.

Many of the decisions giving as a reason for remanding a case by a court of civil appeals that it appears that the ends of justice will better be subserved by such action may, we think, be accounted for on the ground that by oversight the above-mentioned difference between the power of the Supreme Court and courts of civil appeals was not considered, thereby inducing the erroneous assumption that decisions of the Supreme Court and Commission of Appeals relating to the disposition of causes reversed by the Supreme Court were applicable to the disposition of causes reversed by courts of civil appeals. Correct disposition was made of many of such cases because there was some matter of fact to be ascertained or the damage or matter to be decreed was uncertain, but the reasons assigned were misleading, and we cannot escape the conviction that a wrong disposition was made of some of the cases.

The decisions wherein it was given as the reason for remanding a case that it was tried on a wrong theory may or may not have made a correct disposition of the several cases. That depends upon whether or not the statutory exceptions to the duty to render judgment existed. It is doubtless true that in most cases tried on a wrong theory a court of civil appeals, upon reversing the judgment, cannot render final judgment because of the necessity that some matter of fact be ascertained, or the damage or matter to be decreed is uncertain. It would be the better practice, we think, and far less confusing to assign as reasons for remanding, one or more of the exceptional conditions upon which the statute requires such disposition. If that were done, there would be no implication of a discretionary power in courts of civil appeals which does not exist.

Much of what has been said in the preceding paragraph is likewise true of those decisions which have assigned as the reason for rendering final judgment or remanding a case that it appears or does not appear that the case has been fully developed. It is no doubt true that in most cases it was only meant that one or more of the statutory exceptions to the duty to render judgment did or did not exist. It is needless to say, in view of what has already been said, that in our opinion those decisions, if any, not susceptible to such an interpretation, are contrary to the plain provisions of the law.

■ No proposition of law is more elementary, or of less questionable soundness than that, when action of a government agency is dependent for validity upon a grant of power, and such power be granted upon plainly prescribed conditions, courts have no authority to add other and different conditions, or to sustain an exercise of the power in disregard of the conditions. We are therefore forced to conclude that of all the decisions in three of the four classes mentioned, wherein remands have been ordered by courts of civil appeals on the ground that the case was not fully developed, or was tried upon a wrong theory, or that the ends of justice would thereby better be subserved, only those cases were correctly determined wherein there was some matter of fact to be ascertained, or the damage to be assessed, or the matter to be decreed was uncertain.

Under varying circumstances the big problem is to determine when the record shows a necessity that some matter of fact be ascertained or that the damage to be assessed or the matter to be decreed is uncertain within the true meaning of the statute.

We think the instant case is not one which under the statute we have authority to remand for a new trial. We have held in response to a cross-assignment of error that the trial court should have rendered judgment dismissing the case. This that court could not have done, unless there was a total absence of evidence showing (1) that the employer or insurer had knowledge of the injury within 30 days from the time it was received, or (2) was given notice of such injury within that time. There being no such evidence, every matter of fact was determined necessary to require a judgment for the defendant. No assignment of error presented to this court and sustained by us has the effect of unsettling such determination of the facts.

The only purpose which a remand could serve would be to permit the plaintiff by amendment of his pleadings to allege the existence of good cause for failure to give notice of his injury within 30 days from the receipt thereof, and the opportunity to establish that issue by evidence. The absence of such issue from the pleadings would not have the effect of rendering the pleadings insufficient to support a judgment for the plaintiff had same been properly supported by evidence and the issues found in his favor. Had the pleadings been insufficient to support a judgment and this court had so held, there would thereby have resulted an unsettling of the determination of the facts necessary to enable this court to render final judgment. As it is based upon proper pleadings and unchallenged findings, the court should have rendered judgment for the defendant, and the duty of this court to do so is plain.

It is implied in what is said above that the duty and power of a court of civil appeals to render final judgment or remand for a new trial may depend upon the nature of the assignments of error, cross-assignments of error, or fundamental errors, and the action of the court upon same. We deem it conducive to a better understanding of our views to so state expressly. That such is true is well illustrated in words of the Supreme Court as follows: "Since the evidence admitted failed to show a right in plaintiff to recover the land, the judgment of the district court should have been that he take nothing; and such is the proper judgment for this court to render, unless, by his cross assignment of error, defendant in error has shown a reason why the cause should be remanded." Willoughby v. Townsend, 93 Tex. 80, 53 S.W. 581, 582; Arnold v. Ellis, 20 Tex.Civ.App. 262, 48 S.W. 883; Farmers' & Stockmen's Bank v. Sweaney (Tex.Civ.App.) 285 S.W. 930. Thus it is seen that, when a court of civil appeals reverses a judgment, the necessity that some matter of fact be ascertained, or the fact that the damage to be assessed, or the matter to be decreed is uncertain, may result solely from the court's sustaining a cross-assignment of error. We cannot now think of a state of facts where a court of civil appeals may sustain an assignment of error that the trial court erred in refusing a peremptory instruction for the appellant and wherein there is no cross-assignment of error by the appellee and no fundamental error against him appears from the record, and yet the court of civil appeals be authorized to remand the case for another trial.

It is therefore our opinion that the motion for rehearing should be overruled, and it is so ordered.